1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID ESTRADA,                         1:16-cv-00673-EPG (PC)

12              Plaintiff,                   ORDER FINDING COGNIZABLE
                                            CLAIMSA AGAINST DEFENDANTS
13        vs.                                VANDERPOEL, MAXFIELD, AND
                                            SEXTON FOR VIOLATION OF FIRST,
14   J. VANDERPOEL, et al.,                  EIGHTH, AND FOURTEENTH
                                            AMENDMENTS
15              Defendants.
                                            ORDER FOR PLAINTIFF TO FILE
16                                           AMENDED COMPLAINT OR NOTIFY
                                            THE COURT THAT HE IS WILLING TO
17                                           PROCEED ONLY ON THESE CLAIMS
                                            AGAINST THESE DEFENDANTS
18
                                             (Doc. 1.)
19
                                            THIRTY DAY DEADLINE
20

21   **I.      BACKGROUND**

22          David Estrada ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis*

23   with this civil rights action pursuant to 42 U.S.C. § 1983.  On May 12, 2016, Plaintiff filed the

24   Complaint commencing this action, (ECF No. 1.), which is before this Court for screening.

25          On July 21, 2016, (and again on September 26, 2016) Plaintiff consented to Magistrate

26   Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made

27   an appearance.  (ECF No. 9, 10.)  Therefore, pursuant to Appendix A(k)(4) of the Local Rules

28   of the Eastern District of California, the undersigned shall conduct any and all proceedings in

                                             1

the case until such time as reassignment to a District Judge is required.  Local Rule Appendix A(k)(3).

Plaintiff alleges that he has been improperly confined to the Segregated Housing Unit and subject to an "R" classification without cause or due process for the last ten years.  The Court will allow certain claims described below to proceed against Defendants Vanderpoel, Maxfield and Sexton based on their alleged involvement with the decisions to put and keep Plaintiff in the SHU and with this classification.  Additionally, the Court will allow Plaintiff's Fifth Amendment claims against self-incrimination to proceed.  The Court notes that it is merely finding that Plaintiff may proceed past the screening stage for stating a colorable claim, and the Court is not determining whether Plaintiff's constitutional rights were violated at this time.

The Court is giving Plaintiff the option of proceeding against those three individuals, in which case the Court will authorize service on them, or filing an amended complaint, which the Court will screen in due course.

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are

taken as true, courts "are not required to indulge unwarranted inferences." <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Iqbal</u>, 556 U.S. at 678-79; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  <u>Id.</u>  While factual allegations are accepted as true, legal conclusions are not.  <u>Id.</u>

### III.     SUMMARY OF COMPLAINT

In 2004, Plaintiff was at the California Substance Abuse Treatment Facility at Corcoran (CSATF), after serving a Segregated Housing Unit (SHU) term at California State Prison, Corcoran (CSP-COR).  On or around November 15, 2004, Plaintiff's Correctional Counselor conducted an archive review of Plaintiff's California Youth Authority (CYA) file for job placement and proof of general equivalency diploma (GED) completion.

In December 2004, Plaintiff was called to attend a unit classification committee (UCC) where his counselor and other counselors told Plaintiff that, after conducting an archive review of his CYA file, and also being notified of an inmate at another institution, California Corrections Institution, Tehachapi, accusing Plaintiff of being his enemy, the UCC decided to affix a custody designation of "R" to Plaintiff's classification status.  Counselors explained that they had discovered that Plaintiff received a disciplinary infraction while at CYA for allegedly assaulting a ward who said that Plaintiff had taken his property.

Plaintiff argues that he had no history of sex offenses and this violated his right to due process.  Plaintiff alleges that he has not had any history of crimes, convictions and has never been brought up on charges as a juvenile or adult.

Plaintiff appealed the "R" designation, but his appeals were denied.

Plaintiff began to have safety issues in 2005.  He as placed in administrative segregation (Ad-Seg) on June 15, 2005 and was told if he did not enter protective custody, he would lose his life.  Plaintiff was then told by Institutional Gang Investigators (IGI) at CSATF that he would be validated and sent to the SHU.

Plaintiff has and continues to be housed at CSP-COR SHU as an in-active validated "EME" associate.

On January 15, 2015, Plaintiff attended an ICC hearing and again challenged the application of his custody designation being affixed to his classification and retention in SHU since June 15, 2005.  The ICC, including Defendant Vanderpoel as Chairperson of the ICC, decided to keep Plaintiff in the SHU.  Plaintiff's appeals of this designation were again denied.

Plaintiff mentions throughout the complaint that prison officials require him to be a witness against himself.  Plaintiff has been asked to join a "debriefing program," and Plaintiff has declined.

Plaintiff also alleges that he has suffered from mental health problems caused from being over medicated while in the SHU.  Plaintiff also states that he has no meaningful activities, programs, environmental or sensory stimulation or normal human contact.

Plaintiff asserts claims under the Fifth Amendment for forced self-incrimination, the Eighth Amendment for cruel and unusual punishment associated with his lengthy confinement in the SHU without meaningful activities or human contact, and the Fourteenth Amendment for lack of due process.  Plaintiff names ten defendants working at the prison including chief and associate wardens, correctional counselors, and appeals examiners.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697

F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A.    **Eighth Amendment—Conditions of Confinement**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994).  Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*).  Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726,

731 (9th Cir. 2000); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir. 1982); <u>Wright v. Rushen</u>, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the Court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. <u>See</u> <u>Toussaint</u>, 801 F.2d at 1107; <u>Hoptowit</u>, 682 F.2d at 1246-47; <u>Wright</u>, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991); <u>see</u> <u>also</u> <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151 (9th Cir. 2010); <u>Osolinski</u>, 92 F.3d at 938-39; <u>Toussaint</u>, 801 F.2d at 1107; <u>Wright</u>, 642 F.2d at 1133. When considering the conditions of confinement, the Court should also consider the amount of time to which the prisoner was subjected to the condition. <u>See</u> <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978); <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1042 (9th Cir. 2005); <u>Hoptowit</u>, 682 F.2d at 1258.

As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to unconstitutional conditions of confinement to establish an Eighth Amendment violation. <u>See</u> <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 303. This Court has found that "placement of seriously mentally ill inmates in the harsh, restrictive and non-therapeutic conditions of California's administrative segregation units for non-disciplinary reasons for more than a minimal period necessary to effect transfer to protective housing or a housing assignment violates the Eighth Amendment." <u>Coleman v. Brown</u>, 28 F. Supp. 3d 1068, 1099 (E.D.Cal. 2014).

It is well established that the Eighth Amendment's prohibition against cruel and unusual punishment is not violated by classification programs which pursue "important and laudable goals" and are instituted under the State's authority to operate correctional facilities. <u>See</u> <u>Neal v. Shimoda</u>, 131 F.3d 818, 833 (9th Cir. 1997) (classification program designed to treat and

reduce recidivism of sex offenders is well within state's authority to operate correctional facilities and does not violate contemporary standards of decency). Nor does misclassification inflict pain so as to be cruel and unusual punishment violative of the Eighth Amendment. <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1255–56 (9th Cir. 1982); <u>Ramos v. Lamm</u>, 639 F.2d 559, 566–67 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981).

Based on Plaintiff's allegations that he was confined to the SHU, without meaningful activities or human contact, while suffering from mental illness, for approximately ten years, and also received an R classification at great personal safety risk to himself, Plaintiff has stated a colorable cause of action under the Eighth Amendment.  The Court is not issuing a final decision that Plaintiff's confinement as alleged is unconstitutional, especially as the Court has not heard from Defendants and cannot yet evaluate the prison's justifications for Plaintiff's confinement.

This claim is only cognizable against prison officials directly responsible for his confinement, and who have made the decision to keep Plaintiff in the SHU.  Plaintiff does not always say who was responsible for these decisions, so Plaintiff will be given leave to amend his complaint in part to add allegations regarding which prison officials were responsible for putting him and keeping him in the SHU.  Based on Plaintiff's allegations in Plaintiff's complaint regarding the defendants' involvement, the Court finds that Plaintiff has stated an Eighth Amendment violation against Defendants J. Vanderpoel, who acted as chairperson at an Institutional Classification Committee on January 15, 2015 for Plaintiff's annual classification hearing for his SHU placement; Defendant A. Maxfield, who attended Plaintiff's Annual ICC on Janu8ary 15, 2015, acting as the 4B SHU correctional counselor II; Defendant Sexton, who has been involved in Plaintiff's past committee appearances.

Although Plaintiff alleges that numerous other prison officials were involved by either rejecting Plaintiff's appeals or having knowledge of the situation and failing to change it, the Court finds that allegations against these other defendants do not stand because it does not appear they were directly responsible for the decision to put him in, or keep him in, the SHU beside ruling on his prison grievances.

**B.**     **Due Process**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  See Ingraham v. Wright, 430 U.S. 651, 672-73 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003); Neal v. Shimoda, 131 F.3d 818, 827 (9th Cir. 1997); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 462 (9th Cir. 1995); Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993).

Liberty interests can arise both from the Constitution and from state law.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement."  Id.  The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation.  See Hewitt, 459 U.S. at 466-68; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin, 515 U.S. at 481-84.  Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484; see also Myron v. Terhune, 476

F.3d 716, 718 (9th Cir. 2007); <u>Jackson</u>, 353 F.3d at 755; <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th Cir. 2003); <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003).  When conducting the <u>Sandin</u> inquiry, Courts should look to Eighth Amendment standards as well as the prisoners' conditions of confinement, the duration of the sanction, and whether the sanctions will affect the length of the prisoners' sentence.  <u>See Serrano</u>, 345 F.3d at 1078; <u>Ramirez</u>, 334 F.3d at 861; <u>Keenan v. Hall</u>, 83 F.3d 1083, 1089 (9th Cir. 1996).  The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of <u>Sandin</u>.  <u>See Wilkinson</u>, 545 U.S. at 224.  The "atypicality" prong of the analysis requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. <u>See Carlo v. City of Chino</u>, 105 F.3d 493, 499 (9th Cir. 1997).  A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated.  <u>Sandin</u>, 515 U.S. at 485–86; <u>see also</u> <u>Keenan</u>, 83 F.3d at 1088–89.

Prison inmates do not have a protected liberty interest in freedom from alleged classification errors where such errors do not cause the inmates to be subjected to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). The same principle applies to claimed due process violations arising from alleged falsification of prison documents. <u>See Hines v. Gomez</u>, 108 F.3d 265, 269 (9th Cir. 1997) (discussing <u>Sandin</u>, 515 U.S. at 487 n.11) Further, in <u>Neal v. Shimoda</u>, 131 F.3d 818 (9th Cir. 1997), the United States Court of Appeals for the Ninth Circuit found that "[t]he classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that the Supreme Court held created a protected liberty interest." <u>Id.</u> at 829 (quoting <u>Sandin</u>, 515 U.S. at 482). The <u>Neal</u> court held that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." <u>Id.</u> at 830.

The assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As such, Plaintiff is entitled to the minimal procedural protections set forth in Toussaint, such as notice, an opportunity to be heard, and periodic review.  Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d at 1100).   Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons.  Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05.  This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced.  Id. at 1105.   The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers.  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).   The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation.  See Bruce, 351 F.3d at 1287-88.

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner.  See Hewitt, 459 U.S. at 476, abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995); Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds by Sandin, 515 U.S. 472; Toussaint, 801 F.2d at 1100, abrogated in part on other grounds by Sandin, 515 U.S. 472.  The Supreme Court has stated that five days is a reasonable time for the post-placement review. See Hewitt, 459 U.S. at 477. Before the review, the prisoner must receive some notice of the charges and be given an opportunity to respond to the charges.  See id. at 476; Mendoza, 960 F.2d at 1430-31; Toussaint, 801 F.2d at 1100.   The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation."  Toussaint, 801 F.2d at 1100-01 (citations omitted). After the prisoner has been placed in administrative segregation, prison officials must

periodically review the initial placement.  See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101.  Annual review of the placement is insufficient.  See Toussaint, 801 F.2d at 1101.

Plaintiff alleges that he has been put in the SHU and also designated with an "R" suffix without due process.  It is not clear from the complaint whether Plaintiff's periodic reviews satisfy the process that is due under these legal standards.  Moreover, it is not clear whether the prison had sufficient evidence to continue this confinement and classification.  But given Plaintiff's allegations of not being directly accused of any underlying conduct and not being given due process, and Plaintiff's extremely long confinement, the Court finds a colorable claim for violation of Due Process that can proceed past the screening stage.

As discussed above, Plaintiff often does not specify who made the decision to place him and keep him in the SHU, and the Court finds that allegations that prison officials denied his grievances or knew of the situation generally are insufficient.  The Court will find a cognizable claim against Defendants Vandepoel, Maxfield, and Sexton based on Plaintiff's current allegations, and give Plaintiff leave to amend to specify any additional individuals directly involved in these decisions.

C.      Fifth Amendment Right to Self-Incrimination

The Fifth Amendment permits an individual not to answer official questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. Baxter v. Palmigiano, 425 U.S. 308, 316 (1976). Answers implicating others which amount to a tacit admission of one's own complicity are protected by the Fifth Amendment as well. United States v. Safirstein, 827 F.2d 1380, 1388 (9th Cir. 1987). While the State may validly insist on answers to incriminating questions to enable it to sensibly administer its prison system, it may do so only if it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. See Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984); see also Madison v. Lane, 1986 WL 13205, *8 (N.D.Ill.1986) (unless and until inmate granted use immunity he may constitutionally refuse to give testimony to prison officials).  An individual may not be punished by the State for having validly invoked the privilege against self-incrimination. See

Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977).

Plaintiff's allegations present a colorable Fifth Amendment claim.  Plaintiff has alleged that he is required to "debrief" and self-incriminate in order to be released from the SHU, and has not alleged that he has any protections against such self-incrimination being used against him in future proceedings.  As with the above claims, the Court will permit this claim to proceed past the screening stage without making any final determination whether the alleged conduct violates the Fifth Amendment.  The Court will similarly uphold such claims against Defendants Vanderpoel, Maxfield and Sexton based on their participation in the ICC meetings resulting in Plaintiff's SHU confinement.

## V.     CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint states cognizable claims for violation of the First, Eighth, and Fourteenth Amendments against Defendants Vanderpoel, Maxfield and Sexton relating to Plaintiff's R classification, confinement in the SHU, and "debriefing" requirements.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires."  Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Plaintiff is granted leave to file an amended complaint within thirty days if he chooses to do so.

The amended complaint must allege constitutional violations under the law as discussed above.  Specifically, Plaintiff must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 676.  Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights by acting with deliberate indifference to Plaintiff's health or safety, which is sufficiently serious.  Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not

for the purpose of changing the nature of this suit or adding unrelated claims.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Plaintiff may file a First Amended Complaint curing the deficiencies identified by the Court in this order if he believes additional true factual allegations would state any additional claims or claims against any additional defendants, within **thirty (30) days** from the date of service of this order;

3. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:16-cv-00673-EPG; or

4. Plaintiff may instead notify the Court that he is willing to go forward with his complaint only on the claims allowed in this order, for violation of the First, Eighth and Fourteenth Amendments against Defendants Vanderpoel, Maxfield, and Sexton.

\\\
\\\
\\\
\\\
\\\
\\\

13

4.     If Plaintiff fails to file an amended complaint or notify the Court to go forward with the cognizable claims within 30 days, the Court may dismiss Plaintiff's case for failure to comply with a Court order.

IT IS SO ORDERED.

Dated:   **December 19, 2016**                    /s/ Erica P. Grosjean

                                                  UNITED STATES MAGISTRATE JUDGE

14